# ▥ Anapol Schwartz
## ATTORNEYS AT LAW

**James R. Ronca, Esquire**
262 Boas Street
Harrisburg, PA 17102
jronca@anapolschwartz.com

(717) 901-3500 Direct Dial
(717) 909-0300 Direct Fax

<u>VIA FACSIMILE - (914) 390-4278</u>



1710 Spruce Street
Philadelphia, PA 19103

1040 Kings Highway North
Suite 304
Cherry Hill, NJ 08034

262 Boas Street
Harrisburg, PA 17102

146 North 6th Street
Reading, PA 19601

8700 E Vista Bonita Dr.
Scottsdale, AZ 85255

866-735-2792 Toll Free

www.AnapolSchwartz.com

May 8, 2013

Honorable Cathy Seibel
United States District Judge
Southern District of New York
Hon. Charles L. Brieant Jr. Federal
    Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

> **In re:  Mirena IUD Products Liability Litigation**
>     **No. 13-MD-2434 (CS)**
>     *This Document Relates to All Actions*

Dear Judge Seibel:

The proposed Co-Lead Counsel and Liaison Counsel respectfully submit this letter to provide the information requested in the Court's Case Management Order No. 2. We set forth *seriatim* the information that the Court has requested.

> **A.     How the "organizing Plaintiff's counsel sought consensus on the formation of the Plaintiffs' Steering Committee with the proposed co-lead and liaison counsel.**

This was a multi-step process that began in January 2013.

Shortly after the motion for 28 U.S.C. § 1407 centralization was filed with the Judicial Panel on Multidistrict Litigation ("JPML"), the proposed Co-Lead Counsel organized a meeting in Miami on February 8, 2013. That location was appropriate because a large national lawyers association had their convention there that was to begin on February 9, and a meeting there would promote the highest attendance. The meeting was open upon request, and the proposed Co-Lead Counsel contacted every firm that they were aware of at that time that had an interest in the Mirena litigation, even if that firm had no cases filed as of that date. The original invitation was sent to 15 law firms. The purpose of the meeting was to seek consensus. To our knowledge

Honorable Cathy Seibel
May 8, 2013
In re Mirena IUD Product Liability Litigation
No. 13-MD-2434 (CS)
Page 2

at the time, no one who requested attendance was excluded, even if that person or firm was not on the original list. Eighteen firms attended. At the meeting, the organization of the litigation was discussed in detail. There was consensus on the creation of a Common Benefit Fund for a specific and very limited set of generic litigation expenses. The attendees discussed and agreed that a limited joint prosecution agreement was appropriate to control the common benefit funds and protect attorney work product, in anticipation of a later Court Order on organization. Leadership was discussed and there was consensus at that time on the three proposed Co-Lead Counsel. There was a litigation group meeting the following Monday, February 11, which was attended by about 30 attorneys. The same issues were discussed.

After that meeting, a proposed joint prosecution agreement was drafted by James R. Ronca of Anapol Schwartz and circulated to all for comment. Revisions were made based upon the comments.

A conference call was scheduled for February 26, 2013. Twenty-two law firms were invited to participate. The joint prosecution agreement was circulated and Matthew McCauley of Parker Waichman LLP took the administrative burden of collecting original agreements and placing the funds ($20,000 per firm) in an appropriate account.

Another group call was held on March 13, 2013.

A second in-person meeting was held on March 19, 2013 in San Diego in anticipation of the JPML argument. All of the attorneys who argued for the plaintiffs attended the meeting. At that meeting, leadership was again discussed and the proposed Co-Lead Counsel believed that there was not only consensus but an absence of dissent.

A third in-person organizing meeting was held on April 12, 2013 in Las Vegas. Again, there was consensus on the leadership structure.

Presently, 15 law firms have signed the joint prosecution agreement and paid towards the common benefit fund, representing the vast majority of filed cases, and we believe the vast majority of non-filed case inventories. To our knowledge, none have an objection to the proposed leadership structure.

Throughout this organizing effort, the proposed Co-Lead Counsel tried to identify all law firms who may represent plaintiffs in this litigation. No one was intentionally excluded. The identity of law firms having an interest in this litigation is a fluid matter, given that new cases are filed every week. Nevertheless, proposed Co-Lead Counsel have made every effort to be inclusive in spearheading this effort.

With respect to proposed Liaison Counsel, consensus was reached after the JPML ordered this litigation centralized in this District. At that time, proposed Co-Lead Counsel sought attorneys having an interest in the Mirena litigation who were knowledgeable of the rules

Honorable Cathy Seibel
May 8, 2013
In re Mirena IUD Product Liability Litigation
No. 13-MD-2434 (CS)
Page 3

and practices of the transferee court. Again, we believe that consensus was achieved on the proposal of Mr. Kekatos. An important consideration in selecting a firm to serve as proposed Liaison Counsel in this MDL was that the Seeger Weiss firm and the founder of its mass tort practice, Christopher Seeger, have been involved in, and held leadership roles in, numerous MDL litigations.

To finalize our effort at consensus, two conference calls were held on May 7 and an effort was made to include any law firm who represented a plaintiff in this MDL or intends to file on behalf of a plaintiff. Between the two calls, over 40 attorneys attended representing at least 25 law firms. On these calls, the process above was explained to all, so that those who had not previously participated would know what occurred. Organization of plaintiffs counsel was discussed in detail. At the end of the calls, the entire group was asked if we could represent to the Court that we had consensus on provisional co-lead and liaison counsel, so that we could begin the organizing process and meet and confer with the Defendants in anticipation of the status conference on May 17, 2013. The entire group agreed that to the proposed leadership, subject only to further discussion regarding the makeup of a Plaintiffs' Steering Committee and review and approval by this Court. Contrary views were invited numerous times. There was no dissent or objection. This letter was then circulated to the entire group for comment. Once again, there was no dissent.

These telephone calls and meetings also directly discussed diversity and balanced representation on any proposed Plaintiffs' Steering Committee. There was consensus that this can be addressed at the same time as a steering committee is proposed to the court.

Based upon all of the above, we believe there is consensus amongst the Plaintiffs regarding the appointment of co-lead and liaison counsel, subject to further meetings of counsel to discuss the final makeup of a Plaintiffs' Steering Committee, presentation to this Court by motion, and review and order of this Court

**B.     Why three recommendations for each position were not made.**

There are two reasons for this. First, the proposed Co-Lead Counsel believed that there was consensus. As a result of CMO 2, additional efforts were made as outlined above and we believe we have consensus. We are not aware of any objection. Second, we interpreted the Court's Order No 1 to require a meet-and-confer with counsel for the Defendants. For that reason, we believed that, absent a provisional appointment, no one has authority to speak for all plaintiffs, much less to bind them, at such meet-and-confer discussions. *Manual for Complex Litigation (4th) section 10.22.* The alternative would be to have all plaintiffs' counsel on the call, which would be unwieldy and make agreements very difficult.

Honorable Cathy Seibel
May 8, 2013
In re Mirena IUD Product Liability Litigation
No. 13-MD-2434 (CS)
Page 4

### C.     Why three Co-Lead Counsel were proposed.

The three co-lead counsel were actually nominated at the group meeting by other law firms. Mr. Thompson and Mr. McCauley were nominated based upon (1) experience as set forth in the resumes attached to plaintiffs' counsels' original correspondence to the court, and (2) the fact that their respective law firms have had long involvement with this litigation and were most knowledgeable about it. Mr. Ronca was nominated because he has been successful as a co-lead counsel involving Bayer in *In re Trasylol Products Liability Litigation*, MDL No. 1928 (S.D. Fla.) ("the Trasylol MDL").

Three co-lead counsel are necessary because, in multidistrict litigation involving likely over 1000 individual cases, a substantial amount of generic (that is, non-case-specific) work must be done to promote the efficiencies for which MDLs were created. For example, typically in cases of this type, millions of pages of documents will be produced. Someone will have to negotiate how these documents will be found, produced, and stored. The administrative details of document production, storage, and review are very time-consuming because of the detailed coordination that is required. Attorneys from disparate law firms must be trained to code documents in a commonly-understandable way. The meet-and-confer process alone is extensive. Often, agreements cannot be reached, and argument of the issues, partly based upon what occurs at the –meet-and-confers, typically falls on Co-Lead Counsel.

In addition, Co-Lead Counsel typically organize review of medical and scientific literature, interviewing and retaining experts, educating plaintiffs' counsel concerning the litigation, responding to discovery and dispositive motions, providing technical presentations to the court, organizing a census of plaintiff cases, arranging for depositions of defendant employees and experts, including recommending counsel to take the generic depositions, and attending to the many, many details that occur every week in litigations of this type. Any attorney selected for the position will undoubtedly have other cases to deal with and may not be available for every conference or every meet-and-confer. Thus, complex litigation of this type proceeds more efficiently when there are multiple co-lead counsel. *See also Manual for Complex Litigation* (4th) section 10.21. Using three co-lead counsel has worked well in other litigations. For example, in the *Trasylol* MDL no.1928 there were 4 attorneys in leadership, 2 co-lead counsel and 2 liaison counsel. In *In re Zimmer Nexgen Knee Implant Products Liability Litigation*, MDL No. 2272 (N.D. Ill.) ("the NexGen MDL"), there are 3 co-lead counsel and a liaison counsel. The proposed Co-Lead Counsel invite the Court to contact Judge Middlebrooks of the Southern District of Florida (the presiding judge in the Trasylol MDL) and Judge Pallmeyer of the Northern District of Illinois (the presiding judge in the NexGen MDL) to solicit their views as to whether the multiple lead counsel model worked well in those cases. We believe that they would endorse such a model. We can supply the court with other examples if desired.

Honorable Cathy Seibel
May 8, 2013
In re Mirena IUD Product Liability Litigation
No. 13-MD-2434 (CS)
Page 5

With respect to specific roles for each of the Co-Lead Counsel, at this time, other than discussing the meet-and-confer items enumerated in Order No. 1 and preparing a short position statement for the Court that it directed in section 4 of Order No. 1, the exact roles of co-lead counsel are not yet defined. We think it is more appropriate to define these roles after a Plaintiffs' Steering Committee ("PSC") is appointed and in consultation with that PSC.

We expect the Court to consider the appointment of a PSC after the initial status conference when the Court considers a motion for appointment of a PSC along with the duties and administrative requirements of the PSC.

**D.** **A description of the proposed compensation arrangements as to Liaison and Co-Lead Counsels, and the extent to which remaining Plaintiffs' counsel have concurred in or consented to such arrangements.**

There is presently no proposed compensation arrangement for proposed Co-Lead and Liaison Counsel. As is commonly done in mass tort MDLs, however, we do anticipate that once the Court appoints a leadership structure, including a PSC, that leadership will make a motion to the Court to impose a Common Benefit holdback or assessment against each Plaintiff's individual recovery. That will ensure that a Common Fund, under the Court's supervision, is created so that all counsel who perform work for the common benefit of all Plaintiffs are compensated for their time and reimbursed for their common benefit expenses at an appropriate point. We anticipate that the Court would then review any proposal in detail and consider objections, if there were any. It is the consensus opinion of proposed Co-Lead and Liaison Counsel that compensation of any type for common benefit would be based upon actual work done and benefit conferred, and in accordance with established jurisprudence on attorney's fees, with the Court obviously making any final allocation of Common Benefit fees and reimbursement of common benefit expenses. *See, e.g., In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 647-62 (E.D. La. 2010) (adopting common benefit holdback percentage in major pharmaceutical MDL); *In re Vioxx Products Liab. Litig.*, 802 F. Supp. 2d 740, 769-825 (E.D. La. 2011) (discussing common benefit fees and expenses and making allocation among 108 firms).

**E.** **Certificates of Good Standing**

As directed, Certificates of Good Standing for attorneys McCauley and Kekatos are attached. Also attached is a Certificate of Good Standing for attorney Thompson from October 2012. Certificates of Good Standing take 5-7 days in Pennsylvania, therefore, Attorney Ronca's Certificate will be separately supplied as soon as it is received, along with a current Certificate for Mr. Thompson.

Honorable Cathy Seibel
May 8, 2013
In re Mirena IUD Product Liability Litigation
No. 13-MD-2434 (CS)
Page 6

     We hope that this information answers the Court's questions. If the Court requires further information, we would be pleased to provide it, either orally or in writing.

Respectfully,

**Proposed Co-Lead Counsel**

PARKER WAICHMAN LLP

*/s/ Matthew McCauley*

Matthew McCauley

ANAPOL SCHWARTZ

James R. Ronca

MOTLEY RICE, LLC

*/s/ Fred Thompson*

Fred Thompson

**Proposed Liaison Counsel**

SEEGER WEISS LLP

*/s/ Diogenes P. Kekatos*

Diogenes P. Kekatos

Enclosures

cc:   James Shepherd, Esq. (via email)
     Marie S. Woodbury, Esq. (via email)
     Shayna Cook, Esq. (via email)
     All Plaintiff Counsel (via email)

# Appellate Division of the Supreme Court
## of the State of New York
## First Judicial Department

I, Susanna Rojas, Clerk of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, certify that

## MATTHEW JOSEPH MC CAULEY

was duly licensed and admitted to practice as an Attorney and Counsellor at Law in all the courts of the State of New York on March 4, 2002, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counsellors at Law on file in my office, has duly registered with the administrative office of the courts, and according to the records of this court is in good standing as an attorney and counsellor at law.

In Witness Whereof, I have hereunto set my hand and affixed the seal of this court on February 20, 2013

492

Clerk of the Court



# Appellate Division of the Supreme Court
# of the State of New York
# Second Judicial Department

I, **Aprilanne Agostino**,    Clerk of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, do hereby certify that   **Diogenes P. Kekatos**   was duly licensed and admitted to practice as an Attorney and Counselor-at-Law in all the courts of the State, according to the laws of the State and the court rules and orders, on the  **8 th**  day of   **February 1984,** has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors-at-Law on file in my office, has duly registered with the administrative office of the courts, and according to the records of this court is in good standing as an Attorney and Counselor-at-Law.



In Witness Whereof, I have hereunto set my hand and affixed the seal of said Appellate Division on  May 07, 2013.

**Clerk of the Court**

# The Supreme Court of South Carolina

## Certificate of Good Standing

I, Daniel E. Shearouse, Clerk of the Supreme Court of South Carolina, do hereby certify that Fred Thompson III was duly sworn and admitted as an attorney in this state on November 8, 1979, and is currently an active member of the South Carolina Bar in good standing.

DANIEL E. SHEAROUSE, CLERK

BY _Gayle B Watts_____
DEPUTY CLERK FOR BAR ADMISSIONS

Columbia, South Carolina

October 15, 2012



**Anapol Schwartz**
A T T O R N E Y S   A T   L A W

1710 Spruce Street
Philadelphia, PA 19103

1040 Kings Highway North
Suite 304
Cherry Hill, NJ 08034

252 Boas Street
Harrisburg, PA 17102

James R. Ronca, Esquire
1710 Spruce Street
Philadelphia, PA 19103
jronca@anapolschwartz.com

146 North 6th Street
Reading, PA 19601

(215) 735-1130 Direct Dial
(215) 875-7758 Direct Fax

8700 E Vista Bonita Dr.
Scottsdale, AZ 85255

866-735-2792 Toll Free

www.AnapolSchwartz.com

Fax Cover Sheet

| | | | |
|---|---|---|---|
| To: | The Honorable Cathy Seibel | Fax No.: | (914) 390-4278 |
| From: | James R. Ronca, Esq. | Date: | May 8, 2013 |
| Re: | In re: Mirena IUD Products Liability Litigation | | |

Number of pages:  __9__  (not including cover sheet)

Additional Comments:

The following letter is being faxed, as instructed by Chambers.

Original ____ will  __X__  will not follow in the mail.

**If you experience a problem with this transmission, please contact me at the telephone number listed above.**

The information contained in this facsimile message is intended only for the personal and confidential use of the designated recipients named above. This message may be an attorney/client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you receive this communication in error, please notify Shawn Peterson at (717) 901-3500 and return the original message to us by mail.